UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ANTHONY SUARATO,                                   :

                    Plaintiff,                     :              06 Civ. 5031 (AJP)

          -against-                                :              **OPINION AND ORDER**

BUILDING SERVICES 32BJ PENSION FUND,               :

                    Defendant.                     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**


          Pro Se plaintiff Anthony Suarato brings this action alleging that defendant Building

Services 32BJ Pension Fund improperly denied Suarato his "long-term disability benefits and

disability pension." (D.t. No. 1: Comal.)[1/] The parties have consented to decision of this case by a

Magistrate Judge pursuant to 28 U.S.C. § 636(c). (D.t. No. 26.)

_____

[1/]      Cerate's original complaint identified the defendant as "Building Service 32BJ/Benefit
          Funds." (D.t. No. 1: Comal.) The complaint as amended names Building Service 32BJ
          Pension Fund as defendant (see D.t. Nos. 5, 11), although Cerate sought disability benefits
          from two funds:  Building Service 32BJ Pension Fund ("Pension Fund") and Building
          Service 32BJ Health Fund ("Health Fund"). (See Dkt. No. 29: Def. Rule 56.1 SMT. at p. 1
          & ¶ 2.) Suarato sought "total and permanent disability" benefits from the Pension Fund and
          a "total disability pension" from the Health Fund. (Def. Rule 56.1 SMT. ¶ 2.) Therefore,
          both Funds are discussed in this analysis.

Presently before the Court are the parties' cross-motions for summary judgment based on the administrative record before the Funds. For the reasons set forth below, Cerate's summary judgment motion is DENIED, defendant's summary judgment motion is GRANTED, and Cerate's complaint is dismissed.

## FACTS

### Defendant's Health and Pension Funds

#### The Health Fund

Defendant Health Fund is governed by an Agreement and Declaration of Trust, administered by management and union trustees. (Def. Rule 56.1 SMT. ¶ 3; D.t. No. 30: Johnson Off. ¶ 3 & Ex. C: Health Fund Agreement & Decl. of Trust.)[2] The Trust Agreement provides the Trustees with discretion:

> The Trustees shall have all the general and incidental powers necessary or appropriate to the proper administration of the Plan and the Trust Fund, . . . . Included within such Trustee powers but not by way of limitation, shall be the power:
>
> (a)    To adopt a Plan and amend it from time to time as the Trustees determine in their sole and absolute discretion;
>
> (b)    To pay or provide for the payment of Benefits in accordance with the Plan, and determine the manner of payment of such Benefits;
>
> (c)    To process and approve or deny claims for payments of Benefits, determining whether the conditions for the payment of Benefits as set forth in this Trust Agreement and the Plan have been fulfilled and whether any exceptions or exclusions are applicable;

---

[2]    References to Exhibits are to the exhibits to the affidavit of Sea-Ni-Qua Johnson, Compliance Analyst with the Funds. (D.t. No. 30.)

. . . .

(e)    <u>To decide, in the Trustee's sole discretion, all questions (both factual and legal) relating to the eligibility or rights of Participants or Beneficiaries for Benefits under the Plan, and the amount and kind of all Benefits to be paid under the Plan;</u>

(f)    <u>To interpret, in the Trustees' sole discretion, all terms in this Trust Agreement or in the Plan, including the resolution or clarification of any ambiguities, omissions, or inconsistencies;</u>

(g)    To make, amend, modify or repeal rules and regulations which the Trustees, in their sole discretion, deem necessary or proper for administering the Plan or carrying out the provisions of this Trust Agreement;. . . .

(Ex. C: Health Fund Agreement & Decl. of Trust at 12-13, emphasis added; <u>see</u> Def. Rule 56.1 SMT. ¶ 3.)

The Health Fund's Summary Plan Description ("SPED") describes <u>inter alia</u> the Health Fund's long term disability benefits, requiring "totally disability," defined as being "unable to perform work in any capacity." (Ex. D: Health Fund SPED at 11; <u>see</u> Def. Rule 56.1 SMT. ¶¶ 4-5.) The Health Fund SPED provides the following regarding "[medical [proof":

To be considered as an applicant for Total and Permanent Disability Benefits, the applicant must provide the Plan with medical proof of disability certified by a qualified physician. The Fund may require that you submit to a medical examination by a qualified medical doctor selected by the Fund for determination of disability or continued disability. If so, the cost of the examination will be paid for by the Plan.

<u>All determinations as to an applicant's disability are made in the sole and absolute discretion of The Board of Trustees or their designees.</u>

(Ex. D: Health Fund SPED at 12, emphasis added; <u>see</u> Def. Rule 56.1 SMT. ¶ 6.)

The Health Fund SPED describes the Trustees' responsibilities and authority:

In carrying out their respective responsibilities under the Plan, the Trustees, other Plan fiduciaries, and individuals to whom responsibility for the administration of the Plan has been delegated have discretionary authority to interpret the terms of the Plan, to determine eligibility and entitlement to benefits in accordance with the terms of the Plan, and to decide any fact related to eligibility for an entitlement to benefits. <u>Any interpretation or determination made under the discretionary authority will be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.</u>

(Ex. D: Health Fund SPED at iv, emphasis added; <u>see</u> Def. Rule 56.1 SMT. ¶ 7.)  Under the heading

"Discretionary Action," the Health Fund SPED reserves to the Trustees

the right in their sole discretion:

. . . .

(d) <u>to interpret the provisions of this Plan</u>.

(e) to apply the provisions of this Plan to the circumstances of any claim.

(f) to determine the facts that are relevant to any claims based upon the submissions made to them or to cause additional investigation to be made, as they may deem appropriate.

(Ex. D: Health Fund SPED at 79, emphasis added; <u>see</u> Def. Rule 56.1 SMT. ¶ 8.)  The Health Fund

SPED, under the heading "Plan Interpretation," provides that:

The Board of Trustees and/or its duly authorized designee(s) has the exclusive right, power, and authority, in its <u>sole and absolute discretion, to administer, apply, and interpret the Plan,</u> including this booklet and any other Plan documents, and to decide all matters (including financial matters) arising in connection with the operation or administration of this Fund.  Without limiting the generality of the foregoing, The Board of Trustees and/or its duly authorizes designee(s) will have the sole and absolute discretionary authority to:

• Take all actions and <u>make all decisions (including factual decisions) with respect to the eligibility for and the amount of benefits payable under the Plan;</u>

- Formulate, interpret, and apply the rules and policies necessary to administer the Plan in accordance with the terms of the Plan;

- Decide questions, including legal or factual issues, relating to the calculation and payment of benefits under the Plan;

(Ex. D: Health Fund SPED at 79, emphasis added; see Def. Rule 56.1 SMT. ¶ 9.)

**The Pension Fund**

Defendant Pension Fund also is governed by an Agreement and Declaration of Trust containing identical language to the Health Fund's Agreement and Declaration of Trust regarding the Trustee's powers, including their discretion to interpret the Plan and decide eligibility for benefits. (Ex. E: Pension Fund Agreement & Decl. of Trust at 12-13; accord, Ex. C: Health Fund Agt. & Decl. of Trust at 12-13; see Def. Rule 56.1 SMT. ¶ 10.)

The Pension Fund Plan describes the Fund's benefits and provides:

**Section 4.09 Disability Pension - Eligibility**. A Participant is eligible for a Disability Pension if he meets the following requirements:

(a)     he is totally and permanently disabled (as defined in Section 4.11);

(b)     he has at least 120 months of Service Credits; and

(c)     he became permanently and totally disabled while working in Covered Employment.

. . . .

**Section 4.11 Definition of Total and Permanent Disability**. A Participant shall be deemed totally and permanently disabled if on the basis of medical evidence satisfactory to the Trustees, he is found to have become, while working in Covered Employment, totally and permanently unable, as a result of bodily injury or disease, to engage in any further employment or gainful pursuit. The Trustees or their authorized delegate(s) shall determine whether the Participant is totally and

permanently disabled, when the disability became total and permanent, and the entitlement to a Disability Pension hereunder, in their sole and absolute discretion as provided in Section 7.07, based upon information submitted.

**Section 4.12 Physical Examination**.  A Participant applying for a Disability Pension may be required to submit to an examination by a physician or physicians selected by the Trustees.

. . . .

**Section 7.07 Powers of Trustees**.  The Trustees, and any committee of the Trustees designated by the Trustees in accordance with the provisions of, and in the manner provided by, the Trust Agreement, shall have the exclusive right, power, and authority, in their sole and absolute discretion, to administer, apply and interpret the Plan and any other Plan documents and to decide all matters arising in connection with the operation or administration of the Plan.  Without limiting the generality of the foregoing, the Trustees, and any committee of the Trustees designated by the Trustees in accordance with the provisions of, and in the manner provided by, the Trust Agreement, shall have the sole and absolute discretionary authority to:

(a)     take all actions and make all decisions with respect to the eligibility for, and the amount of, benefits payable under the Plan;

(b)     formulate, interpret and apply rules, regulations and policies necessary to administer the Plan in accordance with its terms;

(c)     decide questions, including legal or factual questions, relating to the calculation and payments of benefits under the Plan;

(d)     resolve and/or clarify any ambiguities, inconsistencies and omissions arising under the Plan or other Plan documents; and

(e)     process, and approve or deny, benefit claims and rule on any benefit exclusions.

All determinations made by the Trustees, or any committee of the Trustees designated by the Trustees in accordance with the provisions of, and in the manner provided by, the Trust Agreement, with respect to any matter arising under the Plan and any other Plan documents shall be final and binding on all affected Participants, their Beneficiaries, and any other persons who claim benefits from the Plan through

any of them. The Trustees may delegate such duties or powers as they deem necessary to carry out the administration of the Plan.

(Ex. F: Pension Fund Plan at 11, 24, emphasis added; <u>see</u> Def. Rule 56.1 SMT. ¶ 12.)

The Pension Fund Summary Plan Description more specifically describes the requirements for qualifying as disabled:

**Disability Pension**

You are eligible for Disability Pension if you have at least 120 months of Service Credit and you become totally and permanently disabled after January 1, 1981, while working in Covered Employment.

Total and permanent disability is the inability to work in any capacity, as determined in the discretion of the Trustees or persons they designate. <u>You will not satisfy this definition of total and permanent disability just because you are unable to continue working at your usual occupation; you must be unable to perform any gainful employment to be considered totally and permanently disabled under this Plan</u>.

(Ex. G: Pension Fund SPED at 6, emphasis added; <u>see</u> Def. Rule 56.1 SMT. ¶ 13.) The Pension Fund SPED also contains the same language as the Health Fund SPD concerning the Trustees' "sole and absolute discretion." (Ex. G: Pension Fund SPD at 17-18; <u>accord</u>, Ex. D: Health Fund SPD; <u>see</u> Def. Rule 56.1 Stmt. ¶ 14.)

<u>**Suarato's Accident and Medical Records**</u>

Pro se plaintiff Anthony Suarato, a porter who worked for Harvard Maintenance, was struck and injured by a car on October 20, 2004. (Dkt. No. 30: Administrative Record: Johnson Aff. Ex. H at 1; Ex. I at 13, 25, 30; Ex. L at 1; Ex. P at 3, 4, 16; Ex. U at 1; Ex. V at 3; Ex. AA at 1, 3,

5, 9; Ex. BB at 1; <u>see also</u> Dkt. No. 1: Compl.)[3]  Suarato fractured his left fibula and injured his left

hip, lower back, left shoulder, neck and right hand, was placed in a cast, and required two days

hospitalization.  (Ex. I at 13, 25, 30; Ex. L at 1; Ex. P at 3, 4, 16; Ex. U at 1; Ex. V at 3; Ex. AA at

1, 3, 5, 9; <u>see</u> Dkt. No. 29: Def. Rule 56.1 Stmt. ¶ 17.)

On October 25, 2004, Dr. Charles DeMarco, an orthopedic surgeon, examined

Suarato.  (<u>See</u> Ex. I at 30-32.)  Dr. DeMarco assessed Suarato with "Cervical/Lumbar Derangement

with Strain/Sprain Radiculopathy," left shoulder "Post-Traumatic Impingement and Instability," left

hip contusion and possible labral tear, and "Torn Meniscus [and] ACL Laxity" in the left knee.  (Ex.

I at 31.)[4]  Dr. DeMarco also noted that Suarato reported that he had fractured his left fibula.  (Ex.

I at 31.)  Dr. DeMarco recommended a series of MRIs and x-rays and placed Suarato in a "short-leg

cast."  (Ex. I at 31.)

Dr. DeMarco re-evaluated Suarato on November 1, 2004 (Ex. I at 25-26), noting that

Suarato complained of "pain, discomfort and dysfunction in the left hip [and cervical/lumbar spine]

which is worse on prolonged walking, prolonged standing, and when doing heavy lifting."  (Ex. I at

25.)  Suarato described this pain as "persistent and debilitating."  (Ex. I at 25.)  Suarato also

---

[3]  The administrative record is contained in the exhibits attached to the affidavit of Sha-Ni-Qua Johnson, Compliance Analyst with the Funds, submitted in support of defendant's cross-motion for summary judgment.  (Dkt. No. 30.)

[4]  Radiologist Dr. Matthew J. Stern examined Suarato the same day, finding possible and partial "asymmetric bilateral sacroiliitis," "angulation at the [left humerus'] fracture site," "degenerative changes" in both hips, but particularly the left hip, and "an acute injury of the left fibula shaft at the junction of the proximal and middle one-third."  (Ex. I at 27-28, 31-32.)

complained of "pain, discomfort and dysfunction" in the "anterior and posterior aspects of the left knee" and the left shoulder, which increased with "overhead activities, internal rotation activities, and heavy lifting." (Ex. I at 25.) Upon examination, Dr. DeMarco found Suarato's spinal mobility restricted 15-20%, decreased left shoulder rotation with "a positive impingement sign and positive apprehension test," an injured "left humeral shaft and left shoulder" and tenderness in the left knee.[5] (Ex. I at 25-26.) Dr. DeMarco recommended "MRIs of the cervical spine, lumbar spine, left shoulder, left hip and left knee,"[6] and "evaluation by Dr. Bharam for the left hip." (Ex. I at 26.)

Dr. DeMarco re-evaluated Suarato on November 15, 2004 (Ex. I at 13-15), noting the same complaints of pain, discomfort and dysfunction that Suarato made during his November 1, 2004 evaluation, as well as complaints of pain in Suarato's left fibula,[7] pain in both hips radiating from his lumbar spine and "pain in the cervical spine that radiates into [Suarato's] left elbow." (Ex. I at 13.) Dr. DeMarco noted a 15-30% restriction in Suarato's cervical/lumbar mobility, decreased left shoulder and left hip mobility[8] and tenderness of the "proximal third" of the tibia and fibular.

---

[5] Specifically, Dr. DeMarco noted that Suarato had "tenderness over the medial and lateral patellar facets" and "tenderness over the medial joint line. Lachman is 1+, Anterior Drawer is 1+. There is no gross Varus/Valgus instability. His cast is intact. He has good capillary refill." (Ex. I at 26.)

[6] Suarato's left hip, left knee, left shoulder, and lumbar and cervical spine were evaluated using an MRI scan prior to Suarato's November 15, 2004 appointment with Dr. DeMarco. (See Ex. I at 16-24.)

[7] Suarato removed his left leg cast himself three to four days before the evaluation. (Ex. I at 13.)

[8] Dr. DeMarco noted that Suarato "forward flexe[d] [his left shoulder] to 120 degrees,
(continued...)

(Ex. I at 13-14.) Dr. DeMarco assessed Suarato with a fractured left distal fibula, "anterior cruciate ligament" left knee injury, left shoulder "post-traumatic impingement and instability," a "SLAP lesion," and "some degenerative change in the left hip." (Ex. I at 14-15.) Dr. DeMarco recommended physical therapy. (Ex. I at 14.)

At his next appointment with Dr. DeMarco on November 29, 2004 (Ex. I at 10-12), Suarato complained of "pain, clicking, and popping of [the] left shoulder [which was] worse with overhead activities, internal rotation activities, and heavy lifting," as well as persistent and debilitating spinal pain which "radiate[d] below bilateral lower extremities." (Ex. I at 10.) Dr. DeMarco found that Suarato continued to suffer mobility limitations as on his prior examination. (See Ex. I at 10-11.) Dr. DeMarco noted "significant cervical/lumbar derangement" and the possible need for arthroscopic surgery if physical therapy did not improve Suarato's left shoulder. (Ex. I at 11.)

On December 13, 2004, Dr. DeMarco noted less pain and discomfort in Suarato's left tibia and fibular, worsening left shoulder pain when Suarato engaged in overhead and internal rotation activities and heavy lifting, and continued radiating spinal pain. (See Ex. I at 6-7.) Physical examination revealed continuing mobility limitations and tenderness. (See Ex. I at 6-7.) Suarato felt that his left shoulder was improving with physical therapy and wanted to continue that before considering arthroscopic surgery. (Ex. I at 7.)

---

[8] (...continued)
abduct[ed] to 110 degrees, and internally rotate[d] to the lower lumbar area." (Ex. I at 14.)

Dr. DeMarco's January 10, 2005 re-evaluation of Suarato noted little improvement to Suarato's shoulder, spine or hip, and some improvement to his left knee. (See Ex. I at 4-5.) Suarato's "most pressing complaint [was] in his cervical/lumbar spine and his left shoulder." (Ex. I at 4.)

On February 2, 2005, Dr. DeMarco performed arthroscopic surgery on Suarato's left shoulder. (See Ex. I at 1-3; see also Ex. L at 1; Ex. O at 4; Ex. U at 1.) On April 26, 2005, Dr. Bharam performed arthroscopic surgery on Suarato's left hip to repair a labral tear. (See Ex. L at 5; Ex. U at 1.)

## Suarato's Claim For Disability Benefits Under the Pension Fund and Health Fund

On April 19, 2005, Suarato applied to the Funds for disability benefits. (Ex. H at 1; see Def. Rule 56.1 Stmt. ¶ 15.) Suarato claimed total disability because of left hip and shoulder surgeries and because of "hern[i]ating and bulging disc[s] to [his] [c]ervical [and] lumbar [spine] with nerve root involvement all of which causes severe pain[,] weakness[,] instability[,] limited motion and fun[c]tional loss." (Ex. H at 1.) Suarato claimed that he was "unable to sit[,] stand & walk for extended periods of time[, and that his] conditions require[d] [him] to take medicine & get rest throughout the day." (Ex. H at 1; see Def. Rule 56.1 Stmt. ¶ 15.) Suarato claimed his disability began on the date of his car accident, October 20, 2004. (Ex. H at 1.)

On April 29, 2005, the Funds informed Suarato that he was required to "undergo an independent medical evaluation paid for by the Fund" with Dr. Edward A. Toriello before the Funds could make a decision regarding Suarato's claim. (Ex. J at 1; see Def. Rule 56.1 Stmt. ¶ 19.)

Dr. Toriello is "an independent physician, . . . . not an employee of the Funds." (Def. Rule 56.1 Stmt. ¶ 19.) The Funds asked Dr. Toriello to determine whether Suarato had become "totally disabled as a result of [his] medical condition." (Ex. K. at 1-2; see Def. Rule 56.1 Stmt. ¶ 20.) Among other issues, the Funds asked Dr. Toriello to consider whether Suarato was "unable to perform work in any capacity as a result of bodily injury or disease," what restrictions rendered Suarato unable to work, and how long these restrictions would last. (Ex. K at 1 (emphasis omitted); see Def. Rule 56.1 Stmt. ¶ 20.) The Funds requested that if Dr. Toriello found Suarato unable to work, that Dr. Toriello distinguish between two types of total disability: "totally and permanently disabled (unable to perform any work ever again), or; totally disabled (unable to perform any work now but should be able to perform some kind of work in the future)." (Ex. K at 1; see Def. Rule 56.1 Stmt. ¶ 20.)

Dr. Toriello evaluated Suarato on May 19, 2005. (Ex. L at 1-6.) Suarato complained of "left hip pain, neck pain and low back pain." (Ex. L at 1.) Dr. Toriello examined Suarato and Suarato's medical records.[9] Dr. Toriello's physical examination revealed normal flexibility, stability, and strength in Suarato's cervical spine, right shoulder, right and left elbows, right and left wrists and hands, lumbosacral spine, right and left hips and right and left ankles and feet. (Ex. L at 2-4.)

---

[9] Dr. Toriello's reviewed x-ray reports of Suarato's cervical and lumbosacral spine, left humerus, left shoulder, pelvis and left hip and left tibia and fibular, MRI reports of Suarato's lumbar and cervical spine, left shoulder, left knee and left hip, Dr. De Marco's orthopedic evaluations, a January 4, 2005 report of an "EMG/NCV study of the upper extremities," a February 3, 2005 operative report, Dr. Weiner's March 3, 2005 report, Dr. Bharam's April 19 and May 10, 2005 reports and an April 26, 2005 operative report. (Ex. L at 4-5.)

Suarato's left shoulder revealed "abduction and flexion of 110 degrees (normal is 170 degrees) . . . .
[but] no erythema, ecchymosis, swelling or tenderness. . . . no evidence of shoulder girdle muscle
atrophy. . . . no weakness of the shoulder girdle muscles. . . . no evidence of instability of the left
shoulder. . . . [and no] impingement." (Ex. L at 2-4.) Dr. Toriello noted "a resolved cervical
hyperextension injury, resolved low back strain, resolved left hip contusion, resolved left fibular
fracture and resolved right hand contusion." (Ex. L at 5; Ex. M at 2; see Def. Rule 56.1 Stmt. ¶ 21.)
Dr. Toriello noted a decreased range of motion in Suarato's left shoulder, but could not determine
whether and to what degree this was caused by recent arthroscopic surgery or by a "pre existing
injury to his left humeral shaft." (Ex. L at 5.) Dr. Toriello concluded that Suarato had a "temporary
moderate partial disability [and was] able to work but should avoid overhead use of the left shoulder
as well as pushing, pulling or lifting more than 15lbs with the upper left extremity." (Ex. L at 6,
emphasis omitted; see Def. Rule 56.1 Stmt. ¶ 21.)

### The Funds' Denial of Suarato's Claims for Disability Benefits

On June 30, 2005, the Health Fund denied Suarato's claim for disability benefits,
informing him that:

> Your claim for disability benefits has been denied by the Building Services
> 32 BJ Health Fund.
>
> The plan provides that a participant is totally disabled if, while working in
> covered employment, he or she is found to be unable to perform work in any capacity
> as a result of bodily injury or disease, as is established by medical proof certified by
> a qualified physician.
>
> The Fund has determined that your condition does not meet the above-
> described eligibility standard, based upon the following medical information:

A review of the independent medical exam which you had with Dr. Edward Toriello on May 19, 2005, at which time your medical condition(s) of cervical hyperextension injury, low back strain, left hip contusion, left fibular fracture and right hand contusion was/were assessed for the purpose of determining your ability to work, shows that you are not unemployable in any capacity. In order to qualify as totally disabled, you must be unfit for any work.

(Ex. N at 1, emphasis added; see Def. Rule 56.1 Stmt. ¶ 23.) The Health Fund informed Suarato that

he had "a right to appeal the decision by written request filed with the Appeals Committee within

180 days." (Ex. N at 1, emphasis omitted; see Def. Rule 56.1 Stmt. ¶ 23.)

### Suarato's Appeal of the Funds' Denial of Benefits

On November 18, 2005, Suarato, through his attorney Robert Ungaro, timely appealed

the Health Fund's denial of disability benefits and submitted "new and material evidence in support

of total disability." (Ex. O at 1-2; see Def. Rule 56.1 Stmt. ¶ 24; see also Ex. P.) Suarato claimed

he suffered from "chronic and progressive pain, weakness, instability, limited range of motion,

functional loss and diminished sensation and reflex [rendering] him incapable of performing even

limited sedentary work." (Ex. O at 2.) Suarato submitted the following additional evidence in

support of his appeal:

•     An August 15, 2005 report from Dr. DeMarco noting that Suarato "'has

significant debilitation, multiple areas of permanency, and I do not think the patient is a candidate

for any type of gainful employment. [Suarato] is to remain permanently totally disabled.'"[10] (Ex. P

---

[10]    Dr. DeMarco's evaluation contradicts much of Dr. Toriello's May 19, 2005 evaluation that formed the basis of the Fund's initial benefits denial. (Compare Ex. L at 2-4 with Ex. P at 4-5.) Both doctors similarly assessed Suarato's left shoulder, but Dr. DeMarco found a "20-
(continued...)

at 5-6; <u>see also</u> Ex. O at 2; Def. Rule 56.1 Stmt. ¶ 24.)  Suarato also submitted an additional "Letter

of Disability" from Dr. DeMarco dated July 25, 2005, finding him totally disabled through at least

January 2, 2006.  (Ex. P at 15; Ex. O at 4.)

   •  Dr. DeMarco's, Dr. Weiner's and Dr. Bharam's evaluations of Suarato's

functional ability that Suarato claims demonstrate a "functional ability [that fell] below even the

federal standard for the ability to perform gainful employment (sedentary work)."[11] (Ex. O at 2-5;

---

[10] (...continued)
30% restriction of cervical and lumbar mobility," tenderness in the left knee and left hip, "[p]ain on extremes of range of motion" of the left hip as well as "some limitation of range of motion of the left hip," and "[d]ecreased grip strength" in the right wrist.  (Ex. P at 4-5.) Dr. Toriello found restrictions in Suarato's left shoulder mobility, but found no restrictions in Suarato's overall mobility, no reductions in strength and did not note any pain or tenderness.  (<u>See</u> Ex. L at 2-4.)

[11] Dr. DeMarco noted that Suarato "may not do any repetitive motion above 10 pounds, and can only sit about two to four hours before having significant pain and discomfort [and should not stand] for more than two hours at a time."  (Ex. P at 5, 7-10; Ex. O at 2-3; Def. Rule 56.1 Stmt. ¶ 24.)

 Dr. Weiner also assessed Suarato's functional ability, noting Suarato could walk less than one hour in an eight hour day, sit less than six hours, and carry less than five pounds for one third or two-thirds of an eight hour day.  (Ex. P at 11.)  Dr. Weiner also noted that Suarato requires frequent breaks during the work day, suffered with pain during the work day, could not work eight hours a day due to pain, required medications that "interfere[d] with [his] ability to function in the work setting," and had difficulty concentrating on work. (Ex. P at 12.)  On September 15, 2005, Dr. Weiner reported that Suarato complained of "severe neck pain, back pain, numbness in his hands, and numbness in his feet," and Suarato said that he "cannot sit for more than 10-15 minutes at a time, as well as stand."  (Ex. P at 3.)  Dr. Weiner claimed that Suarato "has been totally disabled since the time of the accident and has not been able to return to work due to numerous medical conditions."  (Ex. P at 3; Ex. O at 4; <u>see</u> Def. Rule 56.1 Stmt. ¶ 24.)  On November 15, 2005, Dr. Weiner conducted
(continued...)

see Def. Rule 56.1 Stmt. ¶ 24.)

•  Hand surgeon Dr. Caliguiri's June 14, 2005 report diagnosing Suarato with "[b]ilateral C5-C6 cervical radiculopathy" and "[m]ild right hand carpal tunnel syndrome."  (Ex. P at 17; Ex. O at 4.)

•  Orthopedic specialist Dr. Merola's treatment notes of January 21, 2005 and March 11, 2005, indicating that Suarato "continues to manifest the signs and symptoms of right upper extremity radiculitis including a positive Spurling's maneuver."  (Ex. P at 32, 33; see Ex. O at 4.)

•  November 2004 MRI results of Suarato's left shoulder, left knee, lumbar spine, cervical spine and left hip.  (Ex. P at 22-30; Ex. O at 6.)

•  A December 26, 2005 Social Security disability Notice of Award letter entitling Suarato to monthly Social Security disability benefits, finding that Suarato became disabled on October 20, 2004.  (Ex. Q at 3-6; see Def. Rule 56.1 Stmt. ¶ 25.)  The accompanying cover letter to the Fund from Suarato's counsel claimed that the Social Security decision was "predicated upon

---

[11]/  (...continued)
an electrodiagnostic study which indicated "evidence of bilateral L5 - S1 radiculopathy." (Ex. P at 1-2.)

Dr. Bharam assessed Suarato's functional ability on August 15, 2005, noting that Suarato could stand and walk less than one hour, and sit less than four hours during an eight hour work day, could lift less than ten pounds occasionally and five pounds frequently, that pain prevented him from working an eight hour day, and that required medications interfered with Suarato's ability to function.  (Ex. O at 5-6; Ex. P at 13.)  Dr. Bharam found Suarato "totally disabled until further notice."  (Ex. P at 13; Ex. O at 6.)

the determination that [Suarato] is fully disabled and that he does not retain a residual functional capacity for even limited sedentary work."  (Ex. Q at 1-2; <u>see</u> Def. Rule 56.1 Stmt. ¶ 25.)

On November 21, 2005, the Funds notified Suarato that they had received Suarato's appeal.  (Ex. R at 1; <u>see</u> Def. Rule 56.1 Stmt. ¶ 26.)  On January 25, 2006, the Funds informed Suarato that he was required to "undergo an independent medical evaluation" by Dr. Ira Rashbaum, "paid for by the Fund," before a decision could be made regarding Suarato's appeal.[12/]  (Ex. S at 1; Def. Rule 56.1 Stmt. ¶ 27.)  The Funds asked Dr. Ira Rashbaum to evaluate Suarato under the same disability standards that the Funds had asked Dr. Toriello to use to evaluate Suarato's initial application for disability benefits.[13/]  (Ex. T at 1; <u>see</u> Def. Rule 56.1 Stmt. ¶ 28; <u>see also</u> Ex. K. at 1-2.)

On February 6, 2006, Dr. Rashbaum evaluated Suarato, reviewed available medical records and submitted a report to the Health Fund.  (Ex. U at 1-3; <u>see</u> Def. Rule 56.1 Stmt. ¶ 29.)  Dr. Rashbaum concluded:

> On examination, [Suarato] is a pleasant gentleman in no acute distress. Vitals are stable.  Left shoulder and hip incisions are clean, dry, and intact.  <u>Active ranges</u>

---

[12/]    ERISA requires this second "independent medical evaluation." (Def. Rule 56.1 Stmt. ¶ 27.) <u>See</u> 29 CFR §§ 2560.503-1(h)(3)(ii), (h)(4).

[13/]    The Funds asked Dr. Rashbaum to determine whether Suarato was "totally disabled," <u>i.e.</u>, "unable to perform work in any capacity as a result of bodily injury or disease," and if so, whether Suarato was "totally and permanently disabled (unable to perform any work ever again)" or "totally disabled (unable to perform any work now but should be able to perform some kind of work in the future)."  (Ex. T at 1, emphasis added; <u>see</u> Def. Rule 56.1 Stmt. ¶ 28.)

of motion of the spine and extremities are within functional limits except left hip internal rotation being about 15 degrees, lumbar flexion about 45 degrees, and lumbar extension about 10 degrees. Strength is at least 4/5 at the bilateral flexors and extensors of the shoulders, elbows, wrists, fingers, hips, knees, and ankles. Sensation is intact at the bilateral C5-T2 and L2-S2 dermatomes. Reflexes are 1/4 at the bilateral biceps, triceps, brachioradialis, knees, and ankles. Straight leg raise is negative bilaterally. No upper motor neuron signs are elicited. Left shoulder impingement signs are negative. Right wrist regional Tinel's and Phalen's signs are negative. There is right cervical and lumbar muscle tenderness. He mobilizes and ambulates independently.

The physical medicine and rehabilitation impression includes chronic cervical and lumbar muscle strains, cervical and lumbar degenerative disease, status-post left shoulder arthroscopy for SLAP lesion, status-post left hip surgery for cystic disease, resolved right hand contusion, and status-post left fibula fracture.

From a physical medicine and rehabilitation standpoint, he is not totally disabled and can return to work in a sedentary capacity.

(Ex. U at 3; see Def. Rule 56.1 Stmt. ¶ 29.)

On February 28, 2006, the Funds prepared an internal "Clinical Disability Appeal Intake Form" recommending that benefits be denied because Suarato was "[n]ot totally disabled and can return to work in a sedentary capacity." (Ex. V at 1; see Def. Rule 56.1 Stmt. ¶ 30.) The Intake Form recommended that the case proceed to the Appeals Committee. (Ex. V at 1; Def. Rule 56.1 Stmt. ¶ 30.)

At the May 24, 2006 appeals hearing, Suarato submitted an additional evaluation from Dr. Weiner who concluded that a May 16, 2006 "electrodiagnostic study reveals evidence of right C5 - C6, C6 - C7 and left C5 - C6 radiculopathy." (Ex. W at 4; see Ex. X at 1; Def. Rule 56.1 Stmt. ¶ 31.)

On May 26, 2006, the Funds' Appeals Committee denied Suarato's appeal for

disability and disability pension benefits in a written letter, relying on Dr. Toriello's and Dr. Rashbaum's reports:

## Appeal for Long Term Disability Benefits

The Building Service 32BJ Health Fund provides that a participant is eligible for LTD benefits if among other requirements, he or she became totally disabled while working in covered employment.

A participant is totally disabled if, on the basis of medical evidence satisfactory to the Trustees, he or she is found to have become, while working in covered employment, totally unable, as a result of bodily injury or disease, to engage in <u>any</u> employment or gainful pursuit.

<u>The Appeals Committee has determined that your condition does not meet the above described clinical eligibility standard based on the following information: Dr. Edward Toriello's Independent Medical Evaluation Report</u> of May 19, 2005 wherein he states, he is able to work; <u>and Dr. Ira Rashbaum's Independent Medical Evaluation Report</u> of February 6, 2006 wherein he states, he can return to work in a sedentary capacity. In addition, the Committee reviewed the medical records you submitted, as well as the entire file.

## Appeal for Disability Pension Benefits

Eligibility for Disability Pension Benefits is described in Section 4.09 of the Building Service 32BJ Pension Fund Plan Document (Plan Document). To be eligible for Disability Pension Benefits a participant must 1) be totally and permanently disabled (as defined in Section 4.11 of the Plan Document); 2) have at least 120 months of Service Credits; and 3) become totally and permanently disabled while working in covered employment.

Section 4.11 of the Plan Document provides that a participant is totally and permanently disabled if, on the basis of the medical evidence satisfactory to the Trustees, he or she is found to have become, while working in covered employment, totally and permanently unable, as a result of bodily injury or disease, to engage in <u>any</u> <u>further</u> employment or gainful pursuit.

The Appeals Committee has determined that your condition does not meet the above-described clinical eligibility standard based on the following information:

Dr. Edward Toriello's Independent Medical Evaluation Report of May 19, 2005 wherein he states, you are able to work; and Dr. Ira Rashbaum's Independent Medical Evaluation Report of February 6, 2006 wherein he states, you can return to work in a sedentary capacity. In addition, the Committee reviewed the medical records you submitted, as well as the entire file.

For the above reasons, the Appeals Committee has denied your appeal of both Long Term Disability and Disability Pension benefits.

(Ex. X at 1-2, emphasis added; see Def. Rule 56.1 Stmt. ¶ 32.) The Appeals Committee's letter also advised Suarato of his right under ERISA to bring suit in federal court challenging their decision. (Ex. X at 2; see Def. Rule 56.1 Stmt. ¶ 32.)

**Suarato's Complaint in this Court and the Parties' Cross-Motions for Summary Judgment**

On June 29, 2006, Suarato filed his federal complaint requesting a "hearing to oppose the decision of Building Service 32BJ" denying him disability benefits. (Compl.; see Def. Rule 56.1 Stmt. ¶ 33.)

On October 19, 2006, in an unrelated case (but also involving the Building Services 32BJ Funds), the Second Circuit held that in addition to physical capacity to perform work, the Funds must "consider [a claimant's] vocational capacity to perform such work" when determining eligibility for disability benefits. Demirovic v. Bldg. Serv. 32 B-J Pension Fund, 467 F.3d 208, 215-16 (2d Cir. 2006) ("A finding that a claimant is physically capable of sedentary work is meaningless without some consideration of whether she is vocationally qualified to obtain such

employment. . . .").[14]

In response, the Funds implemented a "vocational assessment procedure," and asked Suarato to participate by completing a "Training, Education & Experience Questionnaire," in order for the Funds to redetermine Suarato's eligibility for disability benefits. (Ex. Z at 1-2; see Def. Rule 56.1 Stmt. ¶ 33; see also Dkt. No. 17: 9/6/07 Conf. Tr. at 3.) Suarato submitted additional documents for consideration, including three evaluations by Dr. DeMarco (dated March 5, April 23 and June 25, 2007) that concluded that Suarato "remains totally disabled from his work duties at this point"[15] (Ex. AA at 1-6; see Def. Rule 56.1 Stmt. ¶ 34), and a series of reports from Dr. Weiner,[16]

---

[14]    The Second Circuit did not require that "either plan administrators or claimants must use any particular method to determine claimant's vocational capacities." Demirovic v. Bldg. Serv. 32 B-J Pension Fund, 467 F.3d at 215.

[15]    Dr. DeMarco noted that Suarato

> has pain with clicking and popping in the left knee, worse with prolonged walking, prolonged standing, heavy lifting, or ascending or descending stairs. The pain, discomfort, and dysfunction in the left shoulder are worse with overhead activities and internal rotation activities. The pain in the left shoulder has improved significantly from surgical intervention. [Suarato] also has some residual pain in his left hip . . . . There is 20% to 30% restriction of cervical and lumbar mobility. . . . left shoulder, forward flexes to 140 degrees, abducts to 130 degrees . . . . On physical exam of the left knee, there is mild tenderness over the medial and lateral patellar facets.

(Ex. AA at 1-2, 3-4, 5-6.)

Dr. DeMarco assessed Suarato with "[c]ervical and lumbar derangement with strain/sprain radiculopathy . . . . [Suarato] still has some residual pain and discomfort. Anterior cruciate ligament injury to the left knee. Posttraumatic degenerative arthritis of left

(continued...)

two of which (March and May 2007, Ex. AA at 13, 15), conclude that Suarato was "totally disabled and unable to return to work." (Ex. AA at 11-16; see Def. Rule 56.1 Stmt. ¶ 34.)

The Funds retained Apex Rehab Management "to perform vocational assessment analyses for individuals who are found medically capable of performing sedentary work." (Def. Rule 56.1 Stmt. ¶ 35.) Apex performed a "transferable skills analysis, . . . consistent with [Suarato's] specific vocational development, general educational development and current functional capacity." (Ex. BB at 1; see Def. Rule 56.1 Stmt. ¶ 35.) The analysis "identified several occupations that [Suarato] has generally transferable skills and residual functional capabilities to perform. Occupations that are classified as 'unskilled' by the Department of Labor were also considered for the Employability Report." (Ex. BB at 2; see Def. Rule 56.1 Stmt. ¶ 35.) Apex identified four occupations – "Order Clerk," "Answering Machine Operator," "Food Checker" and "Timekeeper," – that "match[ed Suarato's] profile and which exist[ed] in significant numbers in the regional labor market." (Ex. BB at 2; see Def. Rule 56.1 Stmt. ¶ 35.) On September 20, 2007, Apex produced a

---

[15]/     (...continued)
hip." (Ex. AA at 4, 6; Def. Rule 56.1 Stmt. ¶ 34.) A fourth Dr. DeMarco evaluation, dated January 22, 2007, differs from the other three reports in noting Suarato's "left shoulder forward flexes to about a 150 degrees, abducts to about a 120 degrees," and in not concluding that Suarato was totally disabled. (Ex. AA at 9-10.)

[16]/     Dr. Weiner treated Suarato for "severe neck pain" and "severe back pain" with occasional epidural injections and pain medication on January 30, February 26, March 27, April 24, May 22 and June 19, 2007. (Ex. AA at 11-16.) On March 27, 2007, Dr. Weiner noted that Suarato was "unable to lift any heavy objects, or stand for prolonged periods of time or prolonged ambulation." (Ex. AA at 13.)

follow-up report accompanied by a medical evaluation from Dr. Rashbaum, who concluded that Suarato could sit for seven hours and walk or stand for one hour, cumulatively, in an eight hour work day. (Ex. CC at 4; Def. Rule 56.1 Stmt. ¶ 35.) Dr. Rashbaum also concluded that Suarato could never lift ten pounds and could not reach. (Ex. CC at 4; see Def. Rule 56.1 Stmt. ¶ 35.)

On October 1, 2007, the Funds again denied Suarato's claim for disability benefits, based on Apex's and Dr. Rashbaum's conclusion that Suarato had "transferable skills and residual functional capabilities necessary to perform several occupations." (Ex. DD at 1-2; see Def. Rule 56.1 Stmt. ¶ 36.)

On or about October 31, 2007, Suarato, acting pro se, wrote to Judge McMahon, seeking review of the Funds' October 1, 2007 denial of disability benefits, alleging that he was "totally unable to engage in any employment or gainful pursuit" and was "totally unemployable at this time due to the injuries [Suarato] sustained after being struck by a motor vehicle on 10-20-2004." (10/31/07 Suarato Letter to Judge McMahon, at 1.)[17]  Judge McMahon treated Suarato's

---

[17]     Suarato claimed

> [m]y injuries . . . make me unable to do any and all physical labor jobs. I cannot lift, pull, or raise my hands above my head making physical employment impossible. Also I am unable to do a 'desk job' due to the mental dysfunction I experience as a result of the pain medication I take regularly on a daily basis. . . . I must have these medications to have any relief from the pain and pressure I feel to my spine and neck."

(10/31/07 Suarato Letter to Judge McMahon, at 1.)

October 31, 2007 letter as a summary judgment motion.[18/]  On January 17, 2008, the Funds filed an

opposition to Suarato's summary judgment motion and a cross-motion for summary judgment.[19/]

(Dkt. No. 27-30: Def. SJ Motion Papers; Dkt. No. 31: Def. Notice of Motion.)  The Funds' cross-

motion for summary judgment alleges that "no triable issues of fact exist and that as a matter of law,

[Suarato] cannot establish that the denial of benefits by either of the Funds was 'arbitrary and

capricious.'" (Dkt. No. 27: Def. Br. at 1.)

        On March 11, 2008, Suarato submitted an opposition to the Funds' cross-motion for

summary judgment, reiterating Suarato's previous arguments.  (See Dkt. No. 35: Suarato Opp.)  In

addition, Suarato submitted several new documents that were not part of the administrative record.[20/]

---

[18/]   On December 14, 2007, Judge McMahon examined Suarato's October 31, 2007 letter and told defense counsel that the Court was ready to proceed, in essence treating Suarato's letter as a summary judgment motion.  (Dkt. No: 25: 12/14/07 Conf. Tr. at 3-4.)  Judge McMahon also told the Funds to submit a Rule 56.1 statement of material undisputed facts, but that Suarato was not required to do so.  (12/14/07 Conf. Tr. at 7.)

[19/]   The Funds originally filed their opposition papers and cross-motion on January 11, 2008, but re-filed six days later due to an electronic filing error.  (See Dkt. Nos. 20-24.)

[20/]   These documents include a February 28, 2008 Dr. Weiner follow-up report (Suarato Opp. at 7), a January 3, 2008 follow-up visit note by Dr. Weiner concluding Suarato's left lumbar parasipanal tenderness was "[s]evere" (Suarato Opp. at 8-10), and a February 11, 2008 Dr. DeMarco report noting:

        cervical and lumbar parsipinal tenderness. . . . There is a 20-30% restriction of cervical and lumbar mobility. . . . [T]he left shoulder [which] forward flexes to 140 degrees, abducts to 130 degrees, and internally rotates to the lumbar area with decreased external rotation in the left compared to the right.  Positive impingement sign.  Positive apprehension test.  There is some mild deltoid atrophy," and assessing "[c]ervical and lumbar derangement with strain/pain and radiculopathy; . . . still has

                                            (continued...)

(Suarato Opp. at 7-10, 12-13, 19)

The parties consented to decision of this action by a Magistrate Judge pursuant to 28 U.S.C. § 636(c).  (Dkt. No. 29.)

## ANALYSIS

## I.    SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions

---

[20]/      (...continued)
some residual pain and discomfort, . . . anterior cruciate ligament injury of left knee, posttraumatic degenerative arthritis of the left hip, right carpal tunnel syndrome.

(Suarato Opp. at 12-13).  Dr. DeMarco found that Suarato "currently remains totally disabled from work duties at this point. . . . [Suarato] does not want any further testing or x-rays.  He just wants to continue a course of conservative management."  (Suarato Opp. at 13.)  Suarato also submitted documentation of recently filled prescriptions for Alprazolam and Oxycodone.  (Suarato Opp. at 19.)

This Court's review is limited to the administrative record, and thus the Court cannot consider the new documents submitted with Suarato's March 11, 2008 opposition papers. See, e.g., Miller v. United Welfare Fund, 72 F.3d 1066, 1071 (2d Cir. 1995) ("We follow the majority of our sister circuits in concluding that a district court's review under the arbitrary and capricious standard is limited to the administrative record.  Because district courts are required to limit their review to the administrative record, it follows that, if upon a review a district court concludes that the Trustees' decision was arbitrary and capricious, it must remand to the Trustees with instructions to consider additional evidence unless no new evidence could produce a reasonable conclusion permitting denial of the claim or remand would otherwise be a 'useless formality.'"); Gannon v. Aetna Life Ins. Co., 05 Civ. 2160, 2007 WL 2844869 at *10 (S.D.N.Y. Sept. 28, 2007) ("Under the arbitrary and capricious standard of review, the Court is limited to the administrative record.").  Moreover, even if this Court were to consider Suarato's newly submitted evidence, it would not change the Court's conclusion.

on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); <u>see also</u>, <u>e.g.</u>, <u>Celotex Corp.</u> v. <u>Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); <u>Anderson</u> v. <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); <u>Lang</u> v. <u>Retirement Living Pub. Co.</u>, 949 F.2d 576, 580 (2d Cir. 1991).

The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment.  <u>See</u>, <u>e.g.</u>, <u>Adickes</u> v. <u>S.H. Kress & Co.</u>, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970); <u>Chambers</u> v. <u>TRM Copy Ctrs. Corp.</u>, 43 F.3d 29, 36 (2d Cir. 1994); <u>Gallo</u> v. <u>Prudential Residential Servs., Ltd. P'ship</u>, 22 F.3d 1219, 1223 (2d Cir. 1994).  The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on an issue on which the non-movant has the burden of proof.  <u>See</u>, <u>e.g.</u>, <u>Celotex Corp.</u> v. <u>Catrett</u>, 477 U.S. at 323, 106 S. Ct. at 2552-53.

To defeat a summary judgment motion, the non-moving party must do "more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co.</u> v. <u>Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).  Instead, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); <u>accord</u>, <u>e.g.</u>, <u>Matsushita Elec. Indus. Co.</u> v. <u>Zenith Radio Corp.</u>, 475 U.S. at 587, 106 S. Ct. at 1356; <u>Weinstock</u> v. <u>Columbia Univ.</u>, 224 F.3d 33, 41 (2d Cir. 2000) (At summary judgment, "[t]he time has come . . . 'to put up or shut up.'") (citations omitted), <u>cert. denied</u>, 540 U.S. 811, 124 S. Ct. 53 (2003).

In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. at 255, 106 S. Ct. at 2513.[21/] The Court draws all inferences in favor of the nonmoving party only after determining that such inferences are reasonable, considering all the evidence presented. See, e.g., Apex Oil Co. v. DiMauro, 822 F.2d 246, 252 (2d Cir.), cert. denied, 484 U.S. 977, 108 S. Ct. 489 (1987). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 37.

In considering a motion for summary judgment, the Court is not to resolve contested issues of fact, but rather is to determine whether there exists any disputed issue of material fact. See, e.g., Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986), cert. denied, 480 U.S. 932, 107 S. Ct. 1570 (1987). To evaluate a fact's materiality, the substantive law determines which facts are critical and which facts are irrelevant. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. at 248, 106 S. Ct. at 2510. While "disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,] [f]actual disputes that are irrelevant or unnecessary will

---

[21/]    See also, e.g., Feingold v. New York, 366 F.3d 138, 148 (2d Cir. 2004); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 36; Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d at 1223.

not be counted." <u>Id</u>. at 248, 106 S. Ct. at 2510 (citations omitted); <u>see also</u>, <u>e.g.</u>, <u>Knight</u> v. <u>U.S. Fire Ins. Co.</u>, 804 F.2d at 11-12.

It is appropriate to consider a challenge under ERISA to the denial of disability benefits as a summary judgment motion reviewing the administrative record. <u>See</u>, <u>e.g.</u>, <u>Muller</u> v. <u>First Unum Life Ins. Co.</u>, 341 F.3d 119, 124 (2d Cir. 2003); <u>Ganon</u> v. <u>Aetna Life Ins. Co.</u>, 05 Civ. 2160, 2007 WL 2844869 at *6 (S.D.N.Y. Sept. 27, 2007) ("[S]ummary judgment provides an appropriate vehicle whereby the Court can apply substantive ERISA law to the administrative record."); <u>Chitoiu</u> v. <u>Union Provident Corp.</u>, 05 Civ. 8119, 2007 WL 1988406 at *3 (S.D.N.Y. July 6, 2007); <u>Perezaj</u> v. <u>Bldg. Serv. 32B-J Pension Fund</u>, No. CV-04-3768, 2005 WL 1993392 at *4 (E.D.N.Y. Aug. 17, 2005) ("A court evaluating a fund's final decision under the arbitrary and capricious standard should therefore grant summary judgment to the fund where there is no genuine dispute regarding whether the decision was arbitrary and capricious.").

## II.    THE FUNDS' DECISION TO DENY SUARATO DISABILITY BENEFITS IS REVIEWED USING THE ARBITRARY AND CAPRICIOUS STANDARD

### A.    Standard of Review in ERISA Cases

ERISA section 502(a), codified at 29 U.S.C. § 1132(a), permits a beneficiary of an employment benefit plan to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan." 29 U.S.C. § 1132 (a)(1)(B).

The threshold issue is what standard of review the Court should apply when reviewing the Funds' determinations of eligibility for disability benefits under the Health Fund or

Pension Fund plans. As the Supreme Court has noted, "ERISA does not set out the appropriate standard of review for actions under § 1132(a)(1)(B) challenging benefit eligibility determinations." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109, 109 S. Ct. 948, 953 (1989). The Supreme Court thus held "that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the [plan] administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. at 115, 109 S. Ct. at 956-57; accord, e.g., Krauss v. Oxford Health Plans, Inc., No. 06-0343, -- F.3d --, 2008 WL 495654 at *6 (2d Cir. Feb. 26, 2008); Tocker v. Philip Morris Cos., Inc., 470 F.3d 481, 487 (2d Cir. 2006); Nichols v. Prudential Ins. Co. of Am., 406 F.3d 98, 108 (2d Cir. 2005); Locher v. Unum Life Ins. Co. of Am., 389 F.3d 288, 293 (2d Cir. 2004); Muller v. First Unum Life Ins. Co., 341 F.3d 119, 123-24 (2d Cir. 2003); Pagan v. NYNEX Pension Plan, 52 F.3d 438, 441 (2d Cir. 1995).[22/]

---

[22/]    See also, e.g., See, e.g., Mario v. P & C Food Markets, Inc., 313 F.3d 758, 763 (2d Cir. 2002); Kosakow v. New Rochelle Radiology Assocs., 274 F.3d 706, 737-38 (2d Cir. 2001); Polizzano v. NYNEX Sickness & Accident Disability Benefit Plan, No. 99-7160, 189 F.3d 461 (table), 1999 WL 710256 at *1 (2d Cir. Sept. 2, 1999); Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 249 (2d Cir. 1999); Zuckerbrod v. Phoenix Mut. Life Ins. Co., 78 F.3d 46, 49 (2d Cir. 1996); Loughman v. Unum Provident Corp., 04 Civ. 5494, 2008 WL 515916 at *2 (S.D.N.Y. Feb. 25, 2008); DeSantis v. Deutsche Bank Trust Co. Ams., Inc., 501 F. Supp. 2d 593, 598-99 (S.D.N.Y. 2007); Pelosi v. Schwab Capital Mkts., L.P., 462 F. Supp. 2d 503, 509-10 (S.D.N.Y. 2006); Dipper v. Union Labor Life Ins. Co., 400 F. Supp. 2d 604, 609 (S.D.N.Y. 2005); Del Greco v. CVS Corp., 337 F. Supp. 2d 475, 489 (S.D.N.Y. 2004), aff'd, 164 Fed. Appx. 75 (2d Cir. 2006); Bergquist v. Aetna U.S. Healthcare, 289 F. Supp. 2d 400, 408 (S.D.N.Y. 2003); Coram Healthcare Corp. v. Wal-Mart Stores, Inc., 238 F. Supp. 2d 586, 590-91 (S.D.N.Y. 2002); Hogan v. Metromail, 99 Civ.
(continued...)

Under the arbitrary and capricious standard, the scope of review is "narrow," and the Court is not to substitute its judgment for that of the Funds' Trustees. E.g., New England Health Care Employees Union v. NLRB, 448 F.3d 189, 194 (2d Cir. 2006); Pagan v. NYNEX Pension Plan, 52 F.3d at 442; Chitoiu v. UNUM Provident Corp., 05 Civ. 8119, 2007 WL 1988406 at *5 (S.D.N.Y. July 6, 2007).[23/] The "court [is] required to consider 'whether [the defendant's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" Zuckerbrod v. Phoenix Mut. Life Ins. Co., 78 F.3d at 49 (quoting Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst., 46 F.3d 1264, 1271 (2d Cir. 1995)).[24/] Under the arbitrary and

---

[22/]     (...continued)
11204, 2002 WL 373245 at *14 (S.D.N.Y. Mar. 8, 2002) (Peck, M.J.); Diagnostic Med. Assocs. v. Guardian Life Ins. Co., 157 F. Supp. 2d 292, 297 (S.D.N.Y. 2001); Rosario v. Local 32B-32J, 00 Civ. 7557, 2001 WL 930234 at *3 (S.D.N.Y. Aug. 16, 2001); Isr. Aircraft Indus. Int'l, Inc. v. Bica, 98 Civ. 5098, 2000 WL 352452 at *6 (S.D.N.Y. Apr. 5, 2000) (Peck, M.J.); Jiras v. Pension Plan of Make-Up Artists & Hair Stylists Local 798, 95 Civ. 9242, 1997 WL 639243 at *5 (S.D.N.Y. Oct. 16, 1997) (Peck, M.J.), aff'd, 170 F.3d 162 (2d Cir. 1999).

[23/]     See also, e.g., Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 42, 103 S. Ct. 2856, 2866 (1983); Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285-86, 95 S. Ct. 438, 442 (1974); Islander E. Pipeline Co. v. Conn. Dep't of Envtl. Prot., 482 F.3d 79, 108 (2d Cir. 2006); Simone v. Prudential Ins. Co. of Am., 04 Civ. 2076, 2005 WL 475406 at *5 (S.D.N.Y. Feb. 28, 2005) ("A district court employing the arbitrary and capricious standard may not 'substitute [its] own judgment for that of the plan administrator as if [it] were considering the issue of eligibility anew.'"), aff'd, 164 Fed. Appx. 39 (2d Cir. 2006); Chisholm v. Plan Adm'r of Joint Indus. Bd. of Elec. Indus. Benefit Funds, No. 03 CV 1968, 2004 WL 3267292 at *2 (E.D.N.Y. Oct. 19, 2004); Hogan v. Metromail, 2002 WL 373245 at *14; Isr. Aircraft Indus. Int'l, Inc. v. Bica, 2000 WL 352452 at *6 (& cases cited therein); Jiras v. Pension Plan, 1997 WL 639243 at *5.

[24/]     See e.g., Gannon v. Aetna Life Ins. Co., 05 Civ. 2160, 2007 WL 2844869 at *10 (S.D.N.Y. Sept. 28, 2007); Viglietta v. Metro. Life Ins. Co., 04 Civ. 3874, 2005 WL 5253336 at *7
(continued...)

capricious standard, a "district court 'may not upset a reasonable interpretation by the [plan] administrator.'" Zuckerbrod v. Phoenix Mutual Life Ins. Co., 78 F.3d at 49 (quoting Jordan v. Retirement Comm., 46 F.3d at 1271); see also, e.g., Viglietta v. Metro. Life Ins. Co., 2005 WL 5253336 at *7; Diagnostic Med. Assocs. v. Guardian Life Ins. Co., 157 F. Supp. 2d at 298-99. In other words, "[u]nder the arbitrary and capricious standard of review, [the Court] may overturn a decision to deny benefits only if it was 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" Pagan v. NYNEX Pension Plan, 52 F.3d at 442.[25/]

The Second Circuit has "recognized that magic words such as 'discretion' and 'deference' may not be absolutely necessary to avoid a [de novo] standard of review," while "not[ing] that the use of such words is certainly helpful in deciding the issue. When [the Second Circuit has] deemed the arbitrary and capricious standard applicable, the policy language reserving discretion has

---

[24/]   (...continued)
(S.D.N.Y. Sept. 2, 2005), appeal dismissed, 454 F.3d 378 (2d Cir. 2006); Hogan v. Metromail, 2002 WL 373245 at *14; Isr. Aircraft Indus. Int'l, Inc. v. Bica, 2000 WL 352452 at *6; Jiras v. Pension Plan, 1997 WL 639243 at *5.

[25/]   Accord, e.g., Tocker v. Philip Morris Cos., 470 F.3d at 489; Gibbs v. CIGNA Corp., 440 F.3d 571, 575 (2d Cir. 2006); Fay v. Oxford Health Plan, 287 F.3d 96, 104 (2d Cir. 2002); Pochoday v. Bldg. Serv. 32B-J Pension Fund, 5 Fed. Appx. 16, 20 (2d Cir. 2001); Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d at 249; Miller v. United Welfare Fund, 72 F.3d 1066, 1070 (2d Cir. 1995); Gannon v. Aetna Life Ins. Co., 2007 WL 2844869 at *10; DeSantis v. Deutsche Bank Trust Co. Ams., Inc., 501 F. Supp. 2d 593, 598-99 (S.D.N.Y. 2007); Mood v. Prudential Ins. Co. of Am., 379 F. Supp. 2d 267, 274 (E.D.N.Y. 2005) (Weinstein, D.J.); Hachtel v. Citibank, N.A., 334 F. Supp. 2d 315, 319 (E.D.N.Y. 2004); Coram Healthcare Corp. v. Wal-Mart Stores, Inc., 238 F. Supp. 2d 586, 590 (S.D.N.Y. 2002); Diagnostic Med. Assocs. v. Guardian Life Ins. Co. of Am., 157 F. Supp. 2d 292, 299 (S.D.N.Y. 2001); Isr. Aircraft Indus. Int'l, Inc. v. Bica, 2000 WL 352452 at *6; Jiras v. Pension Plan, 1997 WL 639243 at *5.

been clear," such as where "the plan explicitly provided that the trustees had authority to 'resolve all disputes and ambiguities relating to the interpretation of the Plan.'" Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d at 251 (internal quotation marks & citations omitted).[26/] The Second Circuit continued:  "Though we reiterate that no one word or phrase must always be used to confer discretionary authority, the administrator's burden to demonstrate insulation from de novo review requires either language stating that the award of benefits is within the discretion of the plan administrator or language that is plainly the functional equivalent of such wording." Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d at 252.

**B.    Application of the Review Standard to the Health and Pension Funds**

It is undisputed that both the Health Fund's and the Pension Fund's Agreement and Declaration of Trust give the Trustees total authority to interpret the Trust Agreement's and Plan's terms and to determine participants' or beneficiaries' eligibility or rights under the Plan:

> (e)    To decide, in the Trustee's sole discretion, all questions (both factual and legal) relating to the eligibility or rights of Participants or Beneficiaries for Benefits under the Plan, and the amount and kind of all Benefits to be paid under the Plan;
>
> (f)    To interpret, in the Trustees' sole discretion, all terms in this Trust Agreement or in the Plan, including the resolution or clarification of any ambiguities, omissions, or inconsistencies; . . .

---

[26/]    See, e.g., Krauss v. Oxford Health Plans, Inc., 2008 WL 495654 at *6; Nichols v. Prudential Ins. Co. of Am., 406 F.3d at 108; Simone v. Prudential Ins. Co. of Am., 2005 WL 475406 at *5; Blanck v. Consol. Edison Ret. Plan, 02 Civ. 7718, 2004 WL 115199 at *4 (S.D.N.Y. Jan. 26, 2004); Hogan v. Metromail, 2002 WL 373245 at *15; O'Sullivan v. Prudential Ins. Co. of Am., 00 Civ. 7915, 2001 WL 727033 at *2 (S.D.N.Y. June 28, 2001); Isr. Aircraft Indus. Int'l, Inc. v. Bica, 2000 WL 352452 at *7.

(Exs. C & E: Health Fund and Pension Fund Agreements & Decl. of Trust at 12-13, emphasis added, quoted more fully at pages 2-3 above.)

    The Health Fund's SPD further provides that "[a]ll determinations as to an applicant's disability are made in the sole and absolute discretion of The Board of Trustees or their designees."

(Ex. D: Health Fund SPD at 12,  emphasis added.)  The Health Fund's SPD further provides:

> In carrying out their respective responsibilities under the Plan, the Trustees, other Plan fiduciaries, and individuals to whom responsibility for the administration of the Plan has been delegated <u>have discretionary authority</u> to interpret the terms of the Plan, <u>to determine eligibility and entitlement to benefits</u> in accordance with the terms of the Plan, and to decide any fact related to eligibility for an entitlement to benefits. <u>Any interpretation or determination made under the discretionary authority will be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious</u>.

(Ex. D: Health Fund SPD at iv, emphasis added, quoted at pages 3-4 above.)

> The Health Fund SPD authorizes the following:
>
> The Board of Trustees and/or its duly authorized designee(s) has the exclusive right, power, and authority, in its <u>sole and absolute discretion, to administer, apply, and interpret the Plan</u>, . . . .  The Board of Trustees and/or its duly authorizes designee(s) will have the <u>sole and absolute discretionary authority to</u>:
>
> •   Take all actions and <u>make all decisions (including factual decisions) with respect to the eligibility</u> for and the amount of <u>benefits</u> payable under the Plan;
>
> •   Formulate, interpret, and apply the rules and policies necessary to administer the Plan in accordance with the terms of the Plan; . . . .

(Ex. D: Health Fund SPD at 79, emphasis added, quoted more fully at pages 4-5 above.)

The Pension Fund's Plan document describes the Trustees' discretionary power as follows:

> **Section 7.07 Powers of Trustees**.  The Trustees . . . shall have the exclusive right, power, authority, in their <u>sole and absolute discretion</u>, to administer, apply and interpret the Plan and any other Plan documents and to decide all matters arising in connection with the operation or administration of the Plan.  Without limiting the generality of the foregoing, the Trustees . . . shall have the <u>sole and absolute discretionary authority to</u>:
>
> (a)   take all actions and <u>make all decisions with respect to the eligibility for</u>, and the amount of, <u>benefits</u> payable under the Plan; . . . .

(Ex. F: Pension Fund Plan at 11, 24, emphasis added, quoted more fully at pages 6-7 above.)

The Second Circuit and the district courts within the Circuit have repeatedly found that Building Services 32B-J's Pension and Health Funds grant the Trustees discretionary authority to determine eligibility and to construe Plan terms, triggering the arbitrary and capricious standard of review.  See, e.g., <u>Demirovic</u> v. <u>Bldg. Serv. 32 B-J Pension Fund</u>, 467 F.3d 208, 211 (2d Cir. 2006) ("The [32B-J Pension] Plan and the SPD contain language expressly conferring discretionary authority upon the [Pension] Fund's Trustees."); <u>Pochoday</u> v. <u>Bldg. Serv. 32B-J Pension Fund</u>, 5 Fed. Appx. 16, 20 (2d Cir. 2001) ("Because the [32B-J Pension] Plan expressly gave the Trustees of the 32-J [Pension] Fund discretionary authority to determine eligibility and interpret the provisions of the Plan, the denial of [plaintiff's] benefits is reviewed for whether the Trustees' ruling was arbitrary and capricious."); <u>Paljevic</u> v. <u>Bldg. Serv. 32B-J Health Fund</u>, No. 06 CV 1196, 2007 WL 1958888 at *8-9 (E.D.N.Y. June 29, 2007) (The "Fund Agreement clearly and unequivocally grants to the trustees the sole discretion to consider all factual and legal questions relating to benefit

eligibility. . . . Accordingly, I will review Defendant's decision to deny Plaintiff's [long term disability benefits] claim under the 'arbitrary and capricious' standard. . . ."); <u>Dzidzovic</u> v. <u>Bldg. Serv. 32B-J Health Fund</u>, 02 Civ. 6140, 2006 WL 2266501 at *6 (S.D.N.Y. Aug. 7, 2006) ("[T]his court has repeatedly found that the very [32B-J Health] plan at issue grants the Trustees discretionary authority as to its terms and determinations of eligibility, thereby limiting the court's review to the arbitrary and capricious standard.") (citing cases); <u>Brown</u> v. <u>Bd. of Trustees of Bldg. Serv. 32B-J Pension Fund</u>, 392 F. Supp. 2d 434, 442 (E.D.N.Y. 2005) ("The courts that have addressed the question have unanimously found that the [32B-J] Pension Fund Trustees do have such discretion.") (citing cases); <u>Mehaj</u> v. <u>Bldg. Serv. 32B-J Health Fund</u>, 04 Civ. 7613, 2005 WL 2030283 at *1 (S.D.N.Y. Aug. 23, 2005) ("Since both the [32B-J] Health Fund and Pension Fund documents confer discretionary authority to determine eligibility on the Trustees, their denial of benefits to plaintiff must be upheld unless it was arbitrary and capricious."); <u>Nerys</u> v. <u>Bldg. Serv. 32B-J Health Fund</u>, 03 Civ. 0093, 2004 WL 2210256 at *5 (S.D.N.Y. Sept. 30, 2004); <u>Lekperic</u> v. <u>Bldg. Serv. 32B-J Health Fund</u>, No. 02 CV 5726, 2004 WL 1638170 at *4 (E.D.N.Y. July 23, 2004); <u>Cejaj</u> v. <u>Bldg. Serv. 32B-J Health Fund</u>, 02 Civ. 6141, 2004 WL 414834 at *7-8 (S.D.N.Y. Mar. 5, 2004); <u>Sekoulovic</u> v. <u>Bldg. Serv. 32B-J Health Fund</u>, 99 Civ. 10321, 2001 WL 687330 at *4 (S.D.N.Y. June 18, 2001).

In accordance with these precedents, this Court finds that the 32B-J Pension and Health Plans give discretionary authority to the Trustees to determine eligibility for long term disability benefits, and thus the arbitrary and capricious review standard applies here.

### III.   THE FUNDS' DECISION TO DENY SUARATO DISABILITY BENEFITS WAS NOT ARBITRARY AND CAPRICIOUS

Suarato alleges nothing in his complaint, summary judgment motion, or opposition to the Funds' cross-motion for summary judgment indicating that the Funds acted in bad faith, failed to properly consider or ignored relevant evidence, misconstrued the terms of the Health or Pension Funds, or improperly applied the terms of the Plan. (See Dkt. Nos. 1, 35.)  Suarato merely alleges that, contrary to the Funds' conclusion, he is disabled, and "incapable of performing even limited sedentary work."  (Dkt. No. 35: Suarato Opp. ¶ 7.)  Suarato attributes his disability to physical injuries sustained in his October 20, 2004 car accident and to side effects from pain medication, and cites his treating physicians' opinions that he is "permanently totally disabled" and "totally disabled" as proof of his disability status.  (See pages 14-15, 23 above.)

Unfortunately for Suarato, the Funds' Trustees have broad discretion to determine Suarato's benefits eligibility.  (See Point II.B above.)  The Court must give the Trustees' decision wide latitude under the arbitrary and capricious standard, but "must still evaluate whether a 'full and fair' review was conducted by the committee denying a claimant's appeal, and a decision that falls short of a 'full and fair' review will not be affirmed even under the deferential standard."  Karce v. Bldg. Serv. 32B-J Pension Fund, 05 Civ. 9142, 2006 WL 3095962 at *5 (S.D.N.Y. Oct. 31, 2006); see 29 U.S.C. § 1133(2) ("In accordance with regulations of the Secretary, every employee benefit plan shall . . . . afford a reasonable opportunity to any participant whose claim for benefits has been

denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.").[27]

The Trustees' review here was full and fair: on numerous occasions throughout the application and appeals process the Trustees evaluated all evidence submitted by Suarato, including treating physicians' opinions on Suarato's physical health and disability status (see pages 13-14, 17-20 above), employed a vocational expert to determine whether a significant number of jobs existed in the regional economy that matched Suarato's functional capacity (see pages 22-23 above), promptly notified Suarato in writing when the Funds denied benefits with specific reasons for denial easily understandable by Suarato (see pages 13-14, 18-20, 23 above), provided Suarato with the opportunity to examine and rebut documentary evidence (see pages 13-20 above), explained the means by which Suarato could appeal his benefits denial to the Appeals Committee (see page 14 above), and advised Suarato that he had a right to challenge the Appeals Committee's final decision in court (see page 20 above).

---

[27] See also e.g., Demirovic v. Bldg. Serv. 32 B-J Pension Fund, 467 F.3d 208, 212 (2d Cir. 2006); Crocco v. Xerox Corp., 137 F.3d 105, 108 (2d Cir. 1998); Rappa v. Conn. Gen. Life Ins. Co., No. 06-CV-2285, 2007 WL 4373949 at *2 n.2 (E.D.N.Y. Dec. 11, 2007); Cohen v. Metro. Life Ins. Co., 485 F. Supp. 2d 339, 353 (S.D.N.Y. 2007); Giraldo v. Bldg. Serv. 32B-J Pension Fund, 04 Civ. 3595, 2006 WL 380455 at *4 (S.D.N.Y. Feb. 16, 2006); Brown v. Bd. of Trs. of Bldg. Serv. 32B-J Pension Fund, 392 F. Supp. 2d 434, 443 (E.D.N.Y. 2005); Nerys v. Bldg. Serv. 32B-J Health Fund, 03 Civ. 0093, 2004 WL 2210256 at *8 (S.D.N.Y. Sept. 30, 2004); Neely v. Pension Trust Fund, No. 00 CV 2013, 2003 WL 21143087 at *7 (E.D.N.Y. Jan. 16, 2003).

Suarato does not specifically dispute the information on which the Trustees' based their final decision – Dr. Toriello and Dr. Rashbaum's evaluations (concluding that Suarato was not totally disabled) – even though the Trustees' credited these "independent" medical examiners' reports over Suarato's treating physicians' opinions (see pages 14-20, 23 above).[28/]  Although "[p]lan administrators . . . may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinion of a treating physician; . . . courts have no warrant to require administrators to accord special weight to the opinions of a claimant's physician; . . . ." Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 123 S. Ct. 1965, 1972 (2003); see, e.g., Demirovic v. Bldg. Serv. 32 B-J Pension Fund, 467 F.3d at 212; Paese v. Hartford Life & Accident Ins. Co., 449 F.3d 435, 442 (2d Cir. 2006); Fitzpatrick v. Bayer Corp., 04 Civ. 5134, 2008 WL 169318 at *13 (S.D.N.Y. Jan. 17, 2008); Gannon v. Aetna Life Ins. Co., 05 Civ. 2160, 2007 WL 2844869 at *13 (S.D.N.Y. Sept. 28, 2007); Paljevic

---

[28/]    In reading other decisions involving the Funds, it is clear that the Funds have repeatedly hired Dr. Toriello and Dr. Rashbaum to supply so-called "independent" medical evaluations concerning claimants' disability status.  See Demirovic v. Bldg. Serv. 32 B-J Pension Fund, 467 F.3d at 210-11 (Dr. Toriello); Paljevic v. Bldg. Serv. 32B-J Health Fund, No. 06-CV-1196, 2007 WL 1958888 at *3-5 (E.D.N.Y. June 29, 2007) (Dr. Toriello); Mehaj v. Bldg. Serv. 32B-J Health Fund, 04 Civ. 7613, 2005 WL 2030283 at *2 (S.D.N.Y. Aug. 23, 2005) (Dr. Rashbaum); Perezaj v. Bldg. Serv. 32B-J Pension Fund, No. CV-04-3768, 2005 WL 1993392 at *1-2 (E.D.N.Y. Aug. 17, 2005) (Dr. Rashbaum).  The Court assumes that the Funds likely have used Drs. Toriello and Rashbaum to perform evaluations that have not resulted in written judicial decisions.  This Court questions whether the continuing financial relationship between the Funds and these doctors creates an incentive for the doctors to find claimants not disabled.  However, there is no evidence of any impropriety before the Court, and the Court takes Dr. Toriello's and Dr. Rashbaum's evaluations at face value.  The repeated use of these doctors suggests, at the very least, that they are not really "independent" of the Funds.

v. <u>Bldg. Serv. 32B-J Health Fund</u>, 2007 WL 1958888 at *9 ("The Fund is entitled to rely on the

determinations of its own independent physicians over the findings of doctors proffered by

Plaintiff."); <u>Butler</u> v. <u>N.Y. Times Co.</u>, 03 Civ. 5978, 2007 WL 703928 at *5 (S.D.N.Y. Mar. 7,

2007).[29/]   In the instant case, therefore, the Trustees acted within their rights in adopting

Dr. Toriello's and Dr. Rashbaum's evaluations over the directly conflicting opinions of Suarato's

treating physicians that Suarato was disabled and unable to work in any capacity.

       In addition, the Trustees' need not have further explained their reasons for choosing

to credit the opinions of Drs. Toriello and Rashbaum over those of Suarato's treating physicians.  <u>See</u>

<u>Black & Decker Disability Plan</u> v. <u>Nord</u>, 538 U.S. at 834, 123 S. Ct. at 1972 ("[C]ourts [may not]

impose on plan administrators a discrete burden of explanation when they credit reliable evidence

that conflicts with a treating physician's evaluation.");[30/] <u>Demirovic</u> v. <u>Bldg. Serv. 32 B-J Pension</u>

---

[29/]    See also, e.g., <u>Karce</u> v. <u>Bldg. Serv. 32B J Pension Fund</u>, 2006 WL 3095962 at *5; <u>Graham</u>
v. <u>First Reliance Standard Life Ins. Co.</u>, 04 Civ. 9797, 2006 WL 2372244 at *7 (S.D.N.Y.
Aug. 10, 2006); <u>Brown</u> v. <u>Bd. of Trs. of Bldg. Serv. 32B-J Pension Fund</u>, 392 F. Supp. 2d
at 443; <u>Mehaj</u> v. <u>Bldg. Serv. 32B-J Health Fund</u>, 2005 WL 2030283 at *2; <u>Klecher</u> v. <u>Metro.
Life Ins. Co.</u>, 01 Civ. 9566, 2005 WL 1337509 at *9 (S.D.N.Y. June 6, 2005), <u>aff'd</u>, 167 Fed.
Appx. 287 (2d Cir. 2006); <u>Cejaj</u> v. <u>Bldg. Serv. 32B-J Health Fund</u>, 02 Civ. 6141, 2004 WL
414834 at *9 (S.D.N.Y. Mar. 5, 2004).

[30/]    The Supreme Court further explained:

       [Plaintiff] asserts that there are two treating physician rules:  a "procedural"
rule, which requires a hearing officer to explain why she rejected the opinions of a
treating physician and a "substantive" rule, which requires that "more weight" be
given to the medical opinion of a treating physician. . . . [W]e conclude that ERISA
does not support judicial imposition of a treating physician rule, whether labeled
"procedural" or "substantive."

<u>Id</u>. at 834 n.2, 123 S. Ct. at 1972 n.2.

Fund, 467 F.3d at 212 ("[T]here is no 'heightened burden of explanation . . . when [plan administrators] reject a treating physician's opinion.'"); Perezaj v. Bldg. Serv. 32B-J Pension Fund, 2005 WL 1993392 at *4.

Although the Trustees need not have explained exactly why they chose to credit one medical evaluation over another, cases in this Circuit have found a plan administrator's decision to deny disability benefits to be arbitrary and capricious for providing conclusory or illogical reasons for that denial, or for not sufficiently reconciling conflicting medical diagnoses. See Karce v. Bldg. Serv. 32B J Pension Fund, 2006 WL 3095962 at *8 (finding the Appeals Committee failed to give the claimant a full and fair review when the Committee based their decision on "a catalogue of bits and pieces of evidence that conflict and, in some cases, ignore more recent pronouncements by the same doctors"); Giraldo v. Bldg. Serv. 32B-J Pension Fund, 2006 WL 380455 at *4 (finding the Trustees "failed to properly consider plaintiff's application for benefits" when "[t]he Trustees based their denial of plaintiff's physical disability claim on [a doctor's] one-sentence conclusion that plaintiff is fit for sedentary work," with no explanation of what type of sedentary work the plaintiff could perform or find); Brown v. Bd. of Trs. of Bldg. Serv. 32B-J Pension Fund, 392 F. Supp. 2d at 443 (finding a plan administrator's decision arbitrary and capricious when the decision "provide[d] only a conclusory reason for rejecting a claim, e.g., because the claimant did not meet the plan definition for disability, without explaining why the claimant did not meet the plan definition for disability"); Nerys v. Bldg. Serv. 32B-J Health Fund, 2004 WL 2210256 at *9 (finding the Trustees' denial of claimant's appeal to be arbitrary and capricious for failing to "provide . . . a specific reason

or reasons for the denial of the appeal"); Cejaj v. Bldg. Serv. 32B-J Health Fund, 2004 WL 414834

at *9 (finding the Trustees failed to conduct a full and fair review when they "failed to elucidate

whether and how they had reconciled the reports from plaintiff's treating physicians, who diagnosed

plaintiff as permanently and completely disabled . . . , with reports from their own expert, . . . who

determined that plaintiff was fit to return to work, albeit of some unspecified kind.").  In the instant

case, however, the Trustees did not base their denial on Dr. Toriello's and Dr. Rashbaum's

evaluations (that Suarato could perform sedentary work) in the abstract, but only after they had

"reviewed the medical records [Suarato] submitted, as well as the entire file."  (See page 19 above.)

The facts of Suarato's case closely mirror those of Demirovic v. Bldg. Serv. 32 B-J

Pension Fund, in which the Second Circuit found that:

> [T]he Fund relied on the determinations of two independent physicians, both of
> whom examined Demirovic personally. The record shows that the Fund's Appeals
> Committee had all of Demirovic's medical evidence before it, and reviewed it. It was
> within the Fund's discretion to credit the opinions of Drs. Toriello and Brown over
> those of Demirovic's own physicians, and, under the circumstances of this case, we
> do not think that the Fund was required to offer any further explanation of its
> decision to do so.

Demirovic v. Bldg. Serv. 32 B-J Pension Fund, 467 F.3d at 212.  Like Demirovic, the Trustees here

indicated that they credited the "independent" doctors' opinions (including the same Dr. Toriello as

was involved in Demirovic) over those of the treating physicians by noting, albeit briefly, that they

did so after reviewing all evidence, including any conflicting medical opinions.  (See pages 19-20

above.)  Whether Demirovic stands for the general principle that ERISA-governed pension and

health funds rarely need to offer any sort of explanation when crediting independent doctors'

opinions over those of treating physicians, as the Funds claim (see Dkt. No. 27: Funds Br. at 7), or whether <u>Demirovic</u> is limited to factually similar cases, as argued by at least one decision in this district,[31/] it is clear that the Funds' decision here was not arbitrary and capricious under either interpretation.

The Funds also complied with <u>Demirovic</u>'s requirement that they consider Suarato's "individual vocational circumstances" when evaluating Suarato's eligibility for disability benefits. <u>Demirovic</u> v. <u>Bldg. Serv. 32 B-J Pension Fund</u>, 467 F.3d at 213-16. The Funds hired a vocational assessor to perform a vocational assessment,[32/] which identified skilled and semi-skilled jobs existing "in significant numbers in the regional labor market" for which Suarato had "transferable skills," that

---

[31/]   <u>Karce</u> v. <u>Bldg. Serv. 32B J Pension Fund</u> distinguished its facts from those of <u>Demirovic</u>, stating that "<u>Demirovic</u> does not foreclose [a] finding that the Plan did not afford [the claimant] a full and fair review due to the inadequacy of its reasons." <u>Karce</u> v. <u>Bldg. Serv. 32B J Pension Fund</u>, 2006 WL 3095962 at *8. <u>Karce</u> held that:

> While the Second Circuit's assessment [in <u>Demirovic</u>] that the committee was not required to offer 'any further explanation of its decision' does indicate that the reasons given by the Fund perhaps need not be as elaborate as some courts in this circuit have found, . . . the [<u>Demirovic</u>] court did limit its conclusion to the specific facts before it. And those differ significantly from the facts of this case, where the Appeals Committee both 'based' its denial on a list of conflicting evidence and, in that list, cited earlier statements by the plaintiff's doctors while ignoring their clarifications provided in Karce's appeals material.

<u>Karce</u> v. <u>Bldg. Serv. 32B J Pension Fund</u>, 2006 WL 3095962 at *8.

[32/]   The Funds' plans are "silent on the issue of non-medical vocational characteristics," granting the Trustees "broad discretion" to "use any particular method to determine a claimant's vocational capacities" that is not arbitrary and capricious in considering the "claimant's circumstances." <u>Demirovic</u> v. <u>Bldg. Serv. 32 B-J Pension Fund</u>, 467 F.3d at 215.

Suarato could perform at a sedentary "functionary capacity." (<u>See</u> pages 22-23 above.) The Funds, which had previously denied Suarato's disability appeal, re-evaluated Suarato's entire file, incorporating this new vocational information into their analysis. (<u>See</u> page 23 above.) In doing so, the Funds avoided a defect that has led other courts in this Circuit to find that the Funds failed to conduct a full and fair review in denying disability claims.[33]

Finally, the Trustees did consider Suarato's December 26, 2005 Social Security disability Notice of Award letter as part of the administrative record (<u>see</u> pages 19-20 above), which they were required to do, although the Social Security Administration's finding of disability was not binding on the Funds. <u>Pagan</u> v. <u>NYNEX Pension Plan</u>, 846 F. Supp. 19, 21 (S.D.N.Y. 1994) ("Social Security determinations are . . . not binding on ERISA plans, and should not have unintended side effects on such plans not contemplated when the plans were initiated, or by Congress

---

[33]    <u>Compare</u>, <u>e.g.</u>, <u>Nerys</u> v. <u>Bldg. Serv. 32B-J Health Fund</u>, 2007 WL 1032259 at *5 (Remanding to the funds, "[s]ince the record before the Court is devoid of any evidence indicating that the defendants considered Nerys' vocational circumstances, the Court concludes that the defendants' November 2002 decision upholding the denial of disability benefits to the plaintiff was arbitrary and capricious."); <u>Karce</u> v. <u>Bldg. Serv. 32B J Pension Fund</u>, 2006 WL 3095962 at *9 ("By not indicating in the Appeal Letter that it had considered what sort of sedentary work Karce was capable of performing, the Appeals Committee failed to evaluate her application in light of her particular circumstances and thus failed to give her a full and fair review."); <u>Giraldo</u> v. <u>Bldg. Serv. 32B-J Pension Fund</u>, 2006 WL 380455 at *4 (The Trustees' decision to deny disability benefits was arbitrary and capricious where "[a]bsent from the record . . . is what sort of sedentary work plaintiff could physically perform, and what kind of sedentary work the plaintiff could find in light of her past occupation."); <u>Brown</u> v. <u>Bd. of Trs. of Bldg. Serv. 32B-J Pension Fund</u>, 392 F. Supp. 2d at 444 (A "flat refusal to consider a claimant's [vocational] characteristics when determining whether he is able to perform work in any capacity renders the plan's promise of a disability pension hollow for all but the most grievously incapacitated claimants.").

in creating the Social Security disability structure."), aff'd, 52 F.3d 438 (2d Cir. 1995).[34/]  The

Trustees, therefore, acted within their discretion in not finding Suarato disabled, even though the

Social Security Administration came to the opposite conclusion under its own rules and guidelines.[35/]

Accordingly, despite sympathy for Suarato's situation, this Court finds that the

Trustees' denial of Suarato's disability benefits and disability pension was not arbitrary and

capricious.[36/]

---

[34/]    Accord, eg., Paese v. Hartford Life Accident Ins. Co., 449 F.3d at 442; Butler v. N.Y. Times Co., 2007 WL 703928 at *6; Perezaj v. Bldg. Serv. 32B-J Pension Fund, 2005 WL 1993392 at *6; Neely v. Pension Trust Fund, 2004 WL 2851792 at *11; Couture v. UNUM Provident Corp., 315 F. Supp. 2d 418, 426 n.1 (S.D.N.Y. 2004); Atakent v. Prudential Ins. Co. of Am., 02 Civ. 5702, 2004 WL 719170 at *8 (S.D.N.Y. Mar. 31, 2004), aff'd, 125 Fed. Appx. 369 (2d Cir. 2005); Billinger v. Bell Atl., 240 F. Supp. 2d 274, 285 (S.D.N.Y. 2003), aff'd, 124 Fed. Appx. 669 (2d Cir.), cert. denied, 546 U.S. 843, 126 S. Ct. 90 (2005); cf. Gaitan v. Pension Trust Fund of the Pension, Hospitalization & Benefit Plan of the Elec. Indus., 99 Civ. 3534, 2000 WL 290307 at *5 (S.D.N.Y. Mar. 20, 2000) ("An ERISA plan's determination on a disability claim that differs from that of the Social Security Administration is not arbitrary and capricious so long as the plan's finding is reasonable and supported by substantial evidence.").

[35/]    Indeed, because the Social Security Administration has a "treating physician's rule," and ERISA-governed private pension plans do not, it is not very surprising that a claimant could qualify for Social Security disability benefits, but in the plan administrator's discretion be denied private disability benefits on the same administrative record.

[36/]    Unfortunately, this Court's hands are tied by the discretion-granting language in the Funds' plans and the deferential treatment that ERISA caselaw affords the Funds' decision.  The ultimate remedy for workers like Suarato lies with their unions' collective bargaining process or in lobbying Congress or the Secretary of Labor to reform ERISA.  See, e.g., Black & Decker Disability Plan v. Nord, 538 U.S. at 831, 123 S. Ct. at 1970 ("If the Secretary of Labor found it meet to adopt a treating physician rule by regulation [for ERISA plans], courts would examine that determination with appropriate deference.").

## CONCLUSION

For the reasons set forth above, Suarato's summary judgment motion is denied, the

defendant Funds' summary judgment motion is granted, and Suarato's complaint is dismissed with

prejudice.

SO ORDERED.

DATED:     New York, New York
              March 27, 2008

**Andrew J. Peck**
United States Magistrate Judge

Copies to:    Anthony Suarato (Regular & Certified Mail)
            Ira Sturm, Esq.

H:\OPIN\SUARATO